.Opinion of the court, by
Judge Hitchcock:
This is an application in chancery, under-section 9 of the “act directing the mode of proceeding in chancery,” passed January 22, 1822, 22 Ohio L. 75, and the first question is, whether it be a case within the jurisdiction of this court. If the question were new, there might be some doubt. No sale made under the judgment of the Bryans *can affect the rights of Riddle, if he has the legal title. The subject of liens seems to be properly of legal-jurisdiction. We can not, however, consider the question as open. It seems to have been decided in the case of the Bank of the United States v. Shultz, 2 Ohio, 495; Burnet v. City of Cincinnati, 3 Ohio, 86, and in the case of Norton v. Beaver, Curtis and others, decided at the present term. In all these cases this court took jurisdiction, and they are in many of their features similar to the one now before us.
In order for a correct decision of this case, it is necessary to-inquire:
1. Which of the two judgments had originally the preferable-lien.
2. If the elder judgment had originally the preferable lien,, have the Farmers and Mechanics' Bank gained any advantage by *43 superior diligence? Have the Bryans lost any right by laches, or-delay ?
3. Has the subsequent legislation of the state changed, or in any manner faried the rights .of the parties ?
4. Did the sale, by sheriff, to Longwortb, vest in him a legal' title to the premises, divested of the lien of the elder judgment ?
The solution of all these questions must depend upon a proper construction of the statutes, regulating judgments and executions-
The law in' force, when the judgments referred to in the bill were rendered, was the act of January 31, 1816, 14 Ohio L. 174,. Section 2 of this act provides, “ that the lands, tenements, and real estate of the defendant shall be bound and liable to the satisfaction of the judgment, from the first day of the term in which-such judgment is obtained.” Section 7 contains this proviso :• “That judgments-voluntarily confessed in open court shall only have a lien upon lands, tenements,' or hereditaments, from the-day on which they are actually signed or entered.” The judgment of Bryans was entered on January 14, 1820 ; but under section 2 of the act it operated as a lion from December 6, 1819, that being the first day of the term in which the judgment was rendered. This judgment was -recovered in the ordinary course-of judicial proceeding. *The judgment of the Farmers and 'Mechanics Bank operated as a lien only from January 19,1820, because it was on that day “ voluntarily confessed in open court,” and under the proviso of section 7 such judgments have a lien only from the day on which “ they are actually signed or entered.” Bryan’s judgment, then, was the elder judgment, and originally had the elder and preferable lien. This is not controverted by the counsel for complainant.
We will next inquire whether the bank gained any preference-by superior diligence after judgment, or whether the Bryans lost, any right by laches or delay.
The execution of the bank was taken out and delivered to the-sheriff on the 10th, and levied on February 11, 1820. This levy was held up until January 16, 1821, when the premises levied-upon were sold by the sheriff to Longworth, under whom thecempláinant claims title. Bryans’ execution was issued on the 7th of July, and levied upon the same promises on August 14,1820,. and under that levy they are still striving to effect a sale. There does-not seem to have been any culpable neglect on the part of either *44 •of the judgment creditors. The bank execution was first delivered • to the sheriff, and it is intimated, although not very confidently iurged by the counsel for complainant, that by being thus first delivered, this execution gained a preference under section 3 of the act of January 31, 1816. 14 Ohio L. 174. If we were to look to the section alone, without reference to other parts of the statute, we should come, undoubtedly, to this conclusion. But it is the duty of the court to examine the whole statute, and, if possible, give such a construction that the whole shall take effect, and the ■ different parts harmonize together. Sections 3, 4, and 5 of the act of 1816 are intimately connected, and the substance of the three are embodied in section itof the “ act regulating judgments :and executions,” passed February 4, 1824. 22 Ohio h. 108. This section is as follows: “Where two or more writs of execution, .against the same debtor, shall be sued out within the term in which judgment was rendered, or within ten days thereafter, and when two or more executions against the *same debtor shall be delivered to the officer on the same day, no preference shall be given to either of such writs; but if a sufficient sum of money is not made to satisfy all executions, the amount made shall be distributed to the several creditors in proportion to the amount of their respective demands ; in all other cases the writ of execution first delivered to the officer shall be first satisfied,” etc. This section, as well as other parts of the judgment and execution laws has frequently been in review before the court, and in the case of Patterson v. Sheriff of Pickaway County, 2 Ohio, 395, it received a construction. It was held to have been intended “to provide for cases where there were two or more j udgment creditors, having equal rights, and where there is no priority of lien, as when the judgments are recovered in the sdme term; for cases where the judgment does not operate as a lien, but the property is bound only from the time when seized in execution, as goods and chattels,” ■ etc. With this decision we are perfectly satisfied. To give the section a different construction would defeat some of the most essential .provisions of the statute, and destroy the consistency of the law-'Take it literally and the lien takes effect,.not as expressed in the ■statute, “from the first day of the term in which the judgment is rendered,” but from the day of delivering the execution to the . sheriff; that is, so far as respects priority. Such could not have .been the intention of the legislature.
*45 In the ease before the court the two judgments were rendered5 during the same term of the court, but the judgment creditors had', not “ equal rights; there was a priority of lien.and this superiority of right, this “priority of lien,” is not lost to the elder judgment creditor merely from the circumstance that execution upon the junior judgment was first taken out, and first delivered to the-sheriff.
Has the subsequent legislation of the state changed, or in any manner varied the rights of the parties.
It is not pretended that the act regulating judgments and executions, passed February 24, 1820, 18 Ohio L. 180, varied, or in-any manner changed these rights. By the provisions of section 13 of the act, that act of January 31, 1816, is continued in force as to a 11 judgments rendered *priorto June 1,1820. But it is strenuously contended that in consequence of the act of February 1,1822, 20 Ohio L. 69, Bryans lost their priority of lien. It is said that under this law every judgment has a lien upon the real estate of the judgment debtor, from the first day of the terra in which the judgment is entered, whether it be a judgment by' confession, or obtained in the ordinary course of judicial proceeding, and that by this act the acts of 1816 and 1820 are repealed without any saving clause. From which counsel infer that the-priority of the lien is destroyed, and both judgments placed upon an equality. But is this a just inference to be drawn from the premises ? Assuming it as incontrovertible, under the law of 1816 and 1820, the Bryans had a priority oi lien, a preferable right,, this court will not, by the construction of a subsequent statute, divest-them of that right and that lien, unless driven to the necessity of so doing by the express letter and spirit of the statute to be construed. It is not, however, the lien of the judgment alone upon which the defendants rely. Upon this judgment execution had, within the time limited by law, been taken out and levied upon the premises, and this, too, at a time when the judgment creditors had a perfect right that the levy should be made. It certainly would be a forced construction to say that because the legislature have provided that after 1820 all judgments rendered in the same term, whether by confession or otherwise, should have an equal lien. It was intended that this legislation should have a retrospective operation, and destroy all priority of liens upon, judgments previously rendered. It would be but to say in gen *46 -eral terms that the repeal^ of the pre-existing judgment and ex■ecution laws, by the statute of 1822, destroyed all pre-existing judgment liens. Admitting that the legislature have the power ■to do this, we will wait until it is done in express terms before we •■shall say they have exercised that power.
But are the counsel for the complainants correct in saying that in the act of February, 1822, there is no saving clause as to preexisting judgments. Section 16 of that act, 20 Ohio L. 75, provides, “that in all cases where real estate has heretofore been levied upon, and appraised according +to the provisions of the act regulating judgments and executions in force at the time •such judgment was rendered, and shall have been twice advertised and offered for sale, and shall remain unsold for want of bidders, it shall be the duty of the court, from which such execution issued, on motion of the plaintiff, at any time within six months next after the taking effect of this act, to set aside such levy and appraisement, and award a new execution, which shall be levied :according to the provisions of this act, and after such levy the judgment on which the execution issued shall not operate as a lien on the residue of the debtors estate, to the prejudice of any other bona fide creditor; but if the plaintiff, in any such judgment, •shall not, within the time aforesaid, cause the levy and appraisement to be set aside as herein provided, then and in that ease such judgment shall operate as a lien only on such part of the debtor’s estate as shall have been levied on,” etc. This whole section, or •the greater part of it, has reference to previous judgments. The •object seems to have been to excite judgment creditors to diligence in enforcing their claims, and to prevent one creditor from 'hindering others in collecting their debts. So far from destroying pre-existing liens, it recognizes them. If a judgment creditor was dissatisfied with his previous levy and appraisement, he might have it set aside, and have a new execution. If not dissatisfied, he might continue his levy, and “ then, and in that case,” such judgment should “operate as a lien upon such part of the debtor’s -estate as shall have been levied on.” So far, say the legislature, “ it shall operate as a lien,” and no farther. A new lien is not created; one already existing is continued, and continued, too, from the time when it commenced running. It would seem there ■ could be no difference of opinion as to the intention of the legis.lature. They did not intend to destroy rights already acquired, *47 they did not intend to interfere with the priority of liens, but they did intend to prevent one judgment creditor, who might have a prior lien, and who might be actuated by principles of favoritism, toward a judgment debtor, from keeping the whole estate of that judgment debtor locked up from other judgment creditors. The Bryans were satisfied with the levy which had beet) made; they did not move to have the execution, *fche levy, or the appraisement set aside, and the only injury which could result to them, under the law of 1829, would be that their judgment could not operate as a lien upon any other part of the debtor’s estate to the injury of any other judgment creditor.
The act of February 4, 1824, 22 Ohio L. 108, contains no provision which would lead the court, in reference to the ease now before us, to a different conclusion from the act of 1822. Section 17 contains this provision: “ That no judgment heretofore rendered, or which may be hereafter rendered, on which execution shall not have been taken out and levied before the expiration of one year next after the rendition of such judgment, shall operate as a lien on the estate of any debtor, to the prejudice of any other iona fide judgment creditor.” Bryans’ execution was “ taken out and levied” within one year after the rendition of the judgment, and by force of this section the lien is continued.
The last point to be considered is, whether the sale by the sheriff to Longworth vested in him the legal title to the premises, divested of the lien of the elder judgment.
In favor of the principle that a sheriff’s sale, upon a junior judgment, destroys the lien of an elder judgment, the court are referred to 12 Johns. 162. It would seem to me that we might as well be governed by the obvious meaning of our own statute, as by a reported case in the State of New York, unless it shall first be shown that the statute in that state is similar to our own. Section 16 of the act of January 31, 1816, 14 Ohio L. 177; section 20 of the act of February 24, 1820, 10 Ohio L. 187; section 11 of the act of February 1, 1822, 20 Ohio L. 78, prescri be general rules respecting deeds made by sheriffs for lands sold on execution. These several sections of the different laws, if not the same literally, are the same in substance. They not only point out the mode or manner in which the deed shall be made, but declare the effect. That effect is to vest in the purchaser “ as good and as perfect estate in the premises therein mentioned, as was vested in the said defend *48 ant at or after the time when the said lands became liable to th®' satisfaction of the said judgment.” These lands became liable to-the satisfaction of the judgment of the bank on ^January 19, 1820, the day on which Dunseth confessed judgment. On that day the lien attached. What “estate ” had Dunseth on that day in the premises? He had, so far as appears to the court, an absolute estate in fee simple, subject, however, to the lien of Bryans’ older judgment. This “estate” was transferred by the sheriff's-sale to Longworth. But it was transferred incumbered with the same lien. This was all the estate which Dunseth himself could have conveyed, and unless we make some interpolation in the statute, the sheriff can not transfer a better estate, or make a more-perfect title than the judgment debtor himself could have made to his creditor on the day the judgment was entered against him.
Upon the whole case, the court are clear in the opinion that Bryans’ judgment had, originally, the preferable lien; that this-preference has not been lost in consequence of any superior diligence on the part of the bank, or in consequence of any laches or neglect on the part of Bryans; that it has not been taken away by any subsequent legislation of the state; that the sale by the sheriff to Longworth did not divest the premises of this lien; but that it is good and subsisting, and may still be enforced. It follows that the demurrer to the bill is well taken, and must be-sustained.
The bill is dismissed at complainant’s costs.